674 P.2d 1109

**STATE of New Mexico, Petitioner,**

v.

**John DOE, Respondent.**

**No. 15083.**

Supreme Court of New Mexico.

Dec. 21, 1983.

Rehearing Denied Jan. 11, 1984.

Paul Bardacke, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for petitioner.

Winston Roberts-Hohl, Santa Fe, Morris Stagner, Clovis, for respondent.

## OPINION

RIORDAN, Justice.

Respondent John Doe (Doe)· was charged in the children's court division of the district court (children's court), with committing the delinquent acts of aggravated battery, NMSA 1978, Section 30–3–5, criminal sexual penetration, NMSA 1978, Section 30–9–11, and attempted first degree murder, NMSA 1978, Section 30–2–1 (Cum. Supp.1983) and NMSA 1978, Section 30–28–1(A). The children's court attorney filed a pre-trial motion, pursuant to NMSA 1978, Section 32–1–30 (Repl.Pamp.1981), for transfer of the case to district court for prosecution as an adult. The pre-trial motion was granted by the children's court, and Doe appealed. The Court of Appeals reversed the children's court and set aside the transfer order. We granted certiorari and reverse the Court of Appeals.

The issue presented for review is whether the children's court may transfer a child to district court pursuant to Section 32–1–30, when there is evidence that the child *may* be amenable to treatment in available facilities.

We will not recite the testimony of the expert witnesses called at the hearing. The testimony as well as the existing case law is adequately discussed in the Court of Appeals opinion in this case. The parties agree that the only dispute in this appeal is whether there has been compliance with Subsection 32–1–30(A)(4). Subsection 32–1–30(A)(4) (emphasis added), provides that:

A. Notwithstanding the provisions of Section 32–1–29 NMSA 1978, after a petition has been filed alleging a delinquent act, the court may, before hearing the petition on its merits, transfer the matter for prosecution in the district court if:

\* \* \* \* \* \*

(4) the [children's] court *has considered* whether the child is amenable to treatment or rehabilitation as a child through available facilities.

Section 32–1–30 was enacted in 1975, some three years after the Children's Code, NMSA 1978, Sections 32–1–1 through 32–1–45 (Repl.Pamp.1981 and Cum.Supp.1983), was first adopted. Prior to that time, there was no *discretionary* transfer to district court. The sole transfer provision was Section 32–1–29. One major difference between the two provisions is the paragraph in question because under Section 32–1–29, the children's court must find that the child is *not* amenable to treatment or rehabilitation as a child through available facilities. Because of this legislative history, we can assume with a degree of certainty that the Legislature intended to allow the children's court more judicial latitude in transferring a child to district court under the conditions set out in Section 32–1–30.[1]

■ The State claims that the Court of Appeals opinion added two requirements to Section 32–1–30, that the Legislature did not intend, when they remanded the case to children's court with instructions to make the following specific factual determinations: (1) whether the current facilities and treatment options are inadequate, considering Doe's mental condition and his needs, and (2) whether the implementation of an adequate treatment program is not feasible within the time restraints placed upon juvenile authorities to accomplish the rehabilitation. Although these determinations may appropriately be made by the Children's Court to show whether it "has considered" whether the child is amenable to treatment or rehabilitation as a child through available facilities, they are not mandatory nor exclusive under the statute. We therefore determine that these added two requirements are not required in a transfer hearing under Section 32–1–30 and the Children's Court does not need to make specific findings on those subjects.

1. Under Section 32–1–29, the child must be sixteen and the delinquent act must be a felony. Under Section 32–1–30, a child fifteen years or older who is charged with certain felonies may be transferred to district court.

Section 32–1–30 is clear and unambiguous. It requires *only* the *consideration* by the children's court of the child's amenability to treatment before the children's court makes its findings. *State v. Doe,* 99 N.M. 460, 659 P.2d 912 (Ct.App. 1983). This consideration by the children's court and its discretionary transfer under Section 32–1–30 will not be reversed on appellate review, absent an abuse of discretion. *See State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App.1979). Furthermore, it is not an appellate court's right or duty to re-try the case for a different or better result. *Cf. State v. Garcia,* 99 N.M. 771, 781, 664 P.2d 969, 979, *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). The fact that the Children's Court heard evidence of the advantages and disadvantages of the two alternatives is indicative that it "has considered" the matter within the purview of the statute.

The evidence in this case, although from only two witnesses, points out the treatment problems with Doe, whether he is transferred to district court or handled in children's court. The children's court properly considered whether the transfer should take place and decided that it should. Having reviewed the record, we determine that the children's court did not abuse its discretion.

The Court of Appeals is reversed. This case is remanded to the district court for trial, pursuant to the March 15, 1983 Order on the alleged delinquent acts.

IT IS SO ORDERED.

PAYNE, FEDERICI, and STOWERS, JJ., concur.

DAN SOSA, Jr., Senior Justice, respectfully dissenting.

DAN SOSA, Jr., Senior Justice, dissenting.

I respectfully dissent.

Under the majority view, any findings or conclusions of the children's court need not be supported by specific reasons or findings, but only a cursory statement that the court "considered" evidence leading to its conclusion. This ruling will preclude any meaningful inquiry as to the specific findings or reasoning of the court that were paramount to its decision. The amenability of a child to treatment or rehabilitation as a child through available facilities is an evidentiary question. *See State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App.1979). The majority's holding would make it impossible for this Court to even consider a possible abuse of discretion by the children's court. Findings and conclusions not on the record cannot be scrutinized. The majority should not so readily abdicate any portion of the power to review the proceedings of the children's court that was vested in this Court by the New Mexico Constitution. N.M. Const. art. 6, § 2. Applying this power Rule 101(b) of Rules for Appellate Procedure for the Children's Court provides, "These rules shall not be construed to extend or limit the jurisdiction of the supreme court * * * as established by law." NMSA 1978, Crim., Child. Ct., Dom.Rel. & W/C App.R 101(b) (Repl. Pamp.1983). The Bill of Rights of the New Mexico Constitution states, "All persons * * have certain natural, inherent and inalienable rights * * * *." N.M. Const. art. 2, § 4. Had the framers of our Constitution meant all persons except those under the age of eighteen, they would have so stated. It is clear that in New Mexico children as well as adults have rights to due process and fair judicial procedures.

When a court orders the disposition of a child, be it for confinement in an institution, for treatment and rehabilitation, or for transfer to the district court, we should, at the very least, require delineation of those specific findings and conclusions the court "considered" when arriving at its decision. Is this Court willing to say we owe a child less due process in this serious matter than an adult?

The effect of today's holding is to remove abuse of discretion as a basis for an appeal from a children's proceeding. This Court has a duty to zealously guard every party's

fundamental right to review, *no matter what his age.* Criminal Procedure Rule 38(d) applies to a trial without a jury for an adult. It provides that "the court shall make a general finding and shall, in addition, make *specific findings of fact and conclusions of law* on *all* ultimate facts and conclusions of law." NMSA 1978, Crim. P.R. 38(d) (Repl.Pamp.1980) (emphasis added). The majority opinion denies the child the right to obtain specific findings and conclusions, a right given by Rule 38 to the adult in similar circumstances.

It is well established that due process and fair treatment are essential in the proceedings of the children's court. *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The Supreme Court in *Kent* dealt with the minimum requirements for transfer from children's court to district court. It held the children's court did not have complete latitude to transfer the child because the transfer process carries the necessary requirements of due process, fairness and full investigation. The Court recognized some degree of discretion was given to the children's court as to factual considerations, their weight, and conclusions reached, but it determined that discretion "does not confer upon the Juvenile Court a license for arbitrary procedure." *Kent,* 383 U.S. at 553, 86 S.Ct. at 1053. The Court further stated, "there is no place in our system of law for reaching a result of such tremendous consequences * * * *without a statement of reasons.* It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner." *Id.* at 554, 86 S.Ct. at 1053 (emphasis added). The holding of the majority is contrary to both the holding in *Kent* and our own Criminal Procedure Rule 38(d).

The law in the Tenth Circuit is that among those interests of children that need protection is the right not to be confined unnecessarily. Interpreting *Application of*

*Gault,* the court in *Milonas v. Williams* stated, "[c]hildren as well as adults, have substantial liberty interests that are protected from state action by the fourteenth amendment." *Milonas v. Williams,* 691 F.2d 931, 943 (10th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983).

A statement of reasons can insure that the transfer of a child to the district court was not premised on misinformation or inaccuracies in the materials before the court. It is a powerful safeguard and prevents rash or arbitrary decisions. The Second Circuit has stated, "A Sphinx-like silence on the court's part precludes anyone (including the parties, the judge, and an appellate tribunal) from learning whether he acted in error." *United States v. Brown,* 479 F.2d 1170, 1173 (2nd Cir.1973). In *Brown,* this concept was reaffirmed as to sentencing, but it applies equally to a transfer involving serious implications of being tried as an adult as is the case here. A sentence (or transfer) will generally be upheld "unless the sentencing judge relied on improper or unreliable information in exercising his or her discretion or failed to exercise any discretion at all in imposing the sentence." *United States v. Zylstra,* 713 F.2d 1332, 1340 (7th Cir.1983).

This Court has carefully followed the tenets expressed in *Gault* and *Kent* by stating, "When a juvenile is transferred to district court for criminal proceedings * * * *all* of the rights and safeguards in such cases required by law and the Constitution of the United States and the Constitution of New Mexico must be accorded him." *Williams v. Sanders,* 80 N.M. 619, 621, 459 P.2d 145, 147 (1969) (emphasis added); *see Neller v. State,* 79 N.M. 528, 445 P.2d 949 (1968); *Peyton v. Nord,* 78 N.M. 717, 437 P.2d 716 (1968). I see no reason why the full panoply of constitutional protections should not apply to transfer proceedings from the children's court to the district court considering the serious consequences of the transfer.

The transfer process marks the beginning of jeopardy in the judicial proceeding for punishment as an adult.

I align myself with those learned Justices of this Court, who have spoken out before me for the rights of the child. In *Peyton v. Nord,* where we stated a child had a right to a trial by jury, Justice Moise, writing for the majority concluded: "We are impressed with the continuing validity of the statement of Justice Bickley in his dissent in *In re Santillanes,* where [regarding the accused child] he said, 'The rights of the individual guaranteed by the constitution cannot be determined by the criterion of whether we think them useful or otherwise.'" *Peyton v. Nord,* 78 N.M. 717, 727, 437 P.2d 716, 726 (quoting *In re Santillanes,* 47 N.M. 140, 169, 138 P.2d 503, 521 (1943)).

In *State v. Doe,* 98 N.M. 567, 650 P.2d 851 (Ct.App.), *cert. denied,* 98 N.M. 590, 651 P.2d 636 (1982), a juvenile appealed from an order transferring his case to district court. There the trial court entered findings which the appeals court could ascertain were based on the evidence presented. In that case both psychologists agreed the child had not responded to previous psychological treatment and both said he was *not* amenable to treatment within available facilities. That case is distinguishable from the instant case in that here there is agreement among the psychologists that the juvenile is amenable to treatment. In addition there is conflicting testimony concerning whether the treatment necessary can be obtained within available facilities. It is this conflicting testimony that must be resolved by specific findings and conclusions made on the record. Absent these there would be little discernable basis for transfer to the district court. For this reason I am in agreement with opinion of the Court of Appeals ordering remand for further factual determinations, and hereby adopt that opinion as part of my dissent.

No. 7138

Court of Appeals of New Mexico.

Aug. 10, 1983.

OPINION

DONNELLY, Judge.

The sole issue raised on appeal is whether the children's court abused its discretion in ordering the child herein transferred to the district court for trial as an adult on charges of criminal sexual penetration, attempt to commit murder, and aggravated battery of a five-year-old child.

After the child was charged as a delinquent child in need of care or rehabilitation, transfer proceedings were instituted pursuant to NMSA 1978, § 32–1–30 (Repl.Pamp. 1981). At the transfer hearing, the only issue disputed was the child's amenability to treatment in an available facility. After a hearing, the court ordered the transfer, finding: (1) the child was 16 years of age or older at the time of the alleged acts; (2) there were reasonable grounds to believe the child committed the alleged delinquent acts; and (3) the court had considered whether the child is amenable to treatment or rehabilitation as a child through available facilities.

Prior to the hearing on transfer, the children's court judge had ordered that the child be forensically evaluated to determine his sanity at the time of the alleged offenses, whether his capacity to form a criminal intent was diminished, and whether he was amenable to treatment or rehabilitation as a child through available facilities.

At the hearing on the motion to transfer, two witnesses testified for the state; the child presented no evidence. Dr. Gerald Serafino, a psychologist and the director of the forensic evaluation team which examined the child, testified that in his opinion the child was amenable to treatment through available facilities and could be rehabilitated as a child. The primary reasons for his conclusions were predicated

upon the fact that the child had not previously been in trouble and had never received genuine psychological treatment except when he was treated briefly for minor school problems. Dr. Serafino also testified that facilities were available in New Mexico which could undertake treatment of the child. He testified that the CARE unit at the New Mexico State Hospital could take children similar to the child herein for a 60-day treatment program and that the child could be recommitted for additional six-month periods, if necessary. In addition, he testified, the Boy's School at Springer had a psychological treatment program available, though it was less intensive than he thought desirable for the child.

Dr. Serafino testified that the longer commitments and treatment available for adults at the Forensic Hospital might be better for the child. He testified, however, that if the child were tried as an adult he could not be admitted to the Forensic Hospital until he was 18 years of age and that if he were convicted as an adult he would probably be sent to the Boy's School at Springer.

Dr. Serafino stated that the child suffered from low intelligence, possible organic brain dysfunction, and severe learning disabilities. In Serafino's opinion, the child would fit within the standards required for an involuntary commitment as a developmentally disabled child if it were not for the circumstances of his crime, that the child would be a good candidate for transfer from Springer to the State Hospital CARE unit, and that the child should be tried as a juvenile.

Serafino testified that psychological evaluation tests indicated that there was some evidence that the child had suffered brain damage; testing had revealed that the child scored in the lower 1% nationally of the comprehension subtest of the Wechsler Adult Intelligence Test and that he functioned as the average 6-or-7 year-old. He stated that although the present court charges were the first filed against the child, he had experienced serious problems in school: lying, misbehavior, and several episodes of suspected theft. Further, the child had a history of running away from home, and his behavior and performance in school were so poor that his parents had taken him out of school.

Edward Arellana, Jr., a clinical psychologist at the Boy's School, testified that his institution could provide institutional sex offender therapy through personnel from the Sangre de Cristo Community Support Service based in Raton, and which would consist of approximately a one-hour treatment per week. He testified that the program for sex offenders was limited and that a more rigorous sex offender treatment program would be preferable to that provided by the Boy's School. Arellana testified that the current Boy's School program does not specifically deal with sex offenders.

Both the State and the child agree that the evidence as to the child's amenability to treatment was uncontested. The child asserts that since it was undisputed that he is amenable to treatment as a juvenile, the children's court abused its discretion in ordering that the child be transferred to the district court.

The Children's Code contains two separate statutory provisions relating to the transfer of children from the children's court to the district court for trial as an adult. NMSA 1978, §§ 32–1–29 and 32–1–30 (Repl.Pamp.1981). The latter statute was enacted in 1975 investing the children's court with greater discretion in transfer proceedings in cases involving certain specifically enumerated major criminal charges. See State v. Garcia, 93 N.M. 51, 596 P.2d 264 (1979); State v. Doe, 99 N.M. 460, 659 P.2d 912 (Ct.App.1983). In addition to these statutory provisions, the Supreme Court has promulgated by rule procedural requirements governing transfer hearings. NMSA 1978, Child.Ct.R. 43 (Repl. Pamp.1982). Under Rule 43(c), a hearing on a motion to transfer provide both a probable cause determination and an adjudication of whether the criteria for transfer set forth in §§ 32–1–29 or 32–1–30, exist. See Committee Commentary, Child.Ct.R. 43.

The New Mexico transfer statute, § 32–1–30, provides in applicable part:

[A]fter a petition has been filed alleging a delinquent act, the court may, before hearing the petition on its merits, transfer the matter for prosecution in the district court if:

(1) the child was fifteen years of age or more at the time of the * * * alleged * * * delinquent act, and the alleged delinquent act is murder * * * or when the child was sixteen years of age or more and the alleged act is assault with intent to commit a violent felony * * * or kidnapping * * * or a felony criminal sexual penetration * * * or robbery * * * or aggravated burglary * * * or aggravated arson * * *

(2) a hearing on whether the transfer shall be made is held * * *

(3) notice in writing * * * of the hearing is given * * *

(4) *the court has considered whether the child is amenable to treatment or rehabilitation as a child through available facilities;* and

(5) the court makes a specific finding upon the hearing that there are reasonable grounds to believe that the child committed the alleged delinquent act. [Emphasis supplied.]

Amenability to treatment or rehabilitation need only be "considered" by the court. *State v. Garcia,* 93 N.M. 51, 596 P.2d 264; *State v. Doe,* 99 N.M. 460, 659 P.2d 912; *State v. Doe,* 91 N.M. 506, 576 P.2d 1137 (Ct.App.1978). In *State v. Doe,* 91 N.M. at 508, 576 P.2d 1137, it was held that "consider" as used in § 32–1–30(A)(4), means "to reflect on, to think about with a degree of care and caution." *State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App.1979). Nevertheless, consideration may not be reduced to a mere ritual; the basis for the court's determination in this regard must appear of record. *In Re Maricopa County, Juvenile Action No. J–72804,* 18 Ariz.App. 560, 504 P.2d 501 (1972).

As stated in *State v. Doe,* 93 N.M. 481, 601 P.2d 451, to validly transfer a child to the district court for trial as an adult, the court must consider " 'whether the child is amenable to treatment or rehabilitation as a child through available facilities[.]' " "Amenability" involves a prediction as to the child's future conduct; *Id.; see also* T. Lauer, *The New Mexico Children's Code: Some Remaining Problems,* 10 N.M.L.Rev. 341, 366 (1980); it is an evidentiary question resting generally within the sound discretion of the children's court.

The diagnostic evaluation report of the Forensic Evaluation Team concluded that the child was "amenable to treatment or rehabilitation as a child through available facilities." Although the uncontradicted testimony was that the child was amenable to treatment, the testimony was conflicting as to whether, should the child be found to have committed the acts charged available psychological or other treatment programs or facilities necessary for his meaningful treatment and rehabilitation are currently *available in fact* and capable of significantly treating the child during the time the children's court retains jurisdiction.

Dr. Serafino testified that the treatment of a violent sexual offender is generally a long term process and that the CARE unit at the State Hospital requires a 60-day commitment with subsequent recommitment proceedings thereafter. Serafino testified that without proper treatment most sexual offenders have a high probability of recidivism. The evaluation report of the child prepared by Dr. Serafino and Marti Wright, indicated that at that time the CARE unit was full and had twelve persons on the waiting list. Serafino further testified that the statutory 60-day commitment to the CARE unit was inadequate; treatment for the child would require, if possible, a number of successive commitments. The program of treatment as outlined by Dr. Serafino would depend on the availability of space at the State Hospital and the necessity of repeated commitments. *See* NMSA 1978, § 43–1–16.1(I) (Repl.Pamp.1979). Facilities available for psychiatric treatment of adults are not necessarily restricted by the 60-day limitation period. *See* NMSA

1978, §§ 43–1–11, 43–1–12 (Repl.Pamp. 1979).

In reviewing the testimony and the record herein, the issue of whether existing treatment options are in fact adequate to meaningfully treat the child was not squarely addressed. In ruling on the motion to transfer, the children's court judge expressed concern over "the length of time available" for the child's treatment and rehabilitation if he is found to have committed the acts charged. This aspect of "amenability" is an important factor in hearings on transfers under § 32–1–30.

The term "available facilities" as employed in § 32–1–30(A)(4) necessarily requires a determination that treatment and rehabilitation is in fact available, and *adequate* in terms of being substantially effective during the time period that juvenile authorities retain jurisdiction over the child. The children's court may properly consider the child's past record of psychological problems when adjudicating the issue of the child's transfer to the district court for trial as an adult under § 32–1–30, including his amenability for treatment as a child, (*see State v. Doe,* 91 N.M. 506, 576 P.2d 1137), together with evidence concerning the adequacy of available treatment programs in light of the particular needs of the child. In a transfer hearing, the judge should consider whether there are adequate resources for rehabilitation of the child within the juvenile system, including any placement through the Interstate Compact on the Placement of Children. NMSA 1978, § 32–4–1 (Repl.Pamp.1981).

A children's court, in a transfer hearing under § 32–1–30, may take into account evidence bearing on the adequacy and availability of necessary facilities and programs for the treatment of a child. *See Welfare of J.E.C. v. State,* 302 Minn. 387, 225 N.W.2d 245 (1975); Comment, *Juveniles in the Criminal Courts: A Substantive View of the Fitness Decision,* 23 UCLA L.Rev. 988, 1004–1008 (1976). A children's court may not order a transfer to the district court where the uncontradicted evidence establishes that the child is otherwise amenable to treatment and rehabilitation as a child, and where sufficient time is shown to exist for juvenile authorities to reasonably and effectively treat the child. *Welfare of J.E.C. v. State.* The trial court may, however, properly consider whether the child would attain an age at which the children's court no longer has jurisdiction before he could be effectively treated or rehabilitated. *Id.; see also H. v. Superior Court of Los Angeles,* 3 Cal.3d 709, 91 Cal.Rptr. 600, 478 P.2d 32 (1970); *In Re Maricopa County,* 18 Ariz.App. 560, 504 P.2d 501.

In *H. v. Superior Court,* 91 Cal.Rptr. at 603, 478 P.2d at 35, the California Supreme Court held:

The decision [on a motion to transfer] rests in the sound discretion of the juvenile court. . . . Nevertheless, that discretion must be exercised within the framework of the Juvenile Court Law * * * * There must be substantial evidence adduced at the hearing that the minor is not a fit and proper subject for treatment as a juvenile before the court may certify him to the superior court for prosecution. * * * If the possibility that the Youth Authority might have to treat a ward of the juvenile court beyond the age of his majority is the determinative factor in the court's decision that the minor is unfit, there must be substantial evidence in the record that successful treatment might require the extra time.

In considering whether a child is amenable to treatment through available facilities or should be bound over for trial as an adult, the testimony of experts is an important factor in the court's ultimate determination. *H. v. Superior Court of Los Angeles County, id.* Expert testimony on this issue, however, is not conclusive; the court may consider a minor's past record, his pattern of behavior, and the necessity for future treatment. *Id.; In Re Maricopa County,* 18 Ariz.App. 560, 504 P.2d 501; *People v. Allgood,* 54 Cal.App.3d 434, 126 Cal.Rptr. 666 (1976). It is the judge, not the probation officer or experts, who must make the ultimate decision at a transfer hearing as to whether juvenile court jurisdiction should

be retained. *See* Child.Ct.R. 43; *see also Matter of Appeal in Maricopa County,* 135 Ariz. 185, 659 P.2d 1330 (Ct.App.1983); *People v. Allgood.* In *Matter of Appeal in Maricopa County,* 659 P.2d at 1332, the court held:

> The juvenile court judge concluded that given the juvenile's history and emotional problems, the likelihood of reasonable rehabilitation and the prospects for adequate protection of the public in the six and one-half months of juvenile jurisdiction were untenable. This was a reasonable conclusion. The court may consider the length of time available for treatment through the services and facilities within the juvenile system. *See In the Matter of the Appeal in Maricopa County, Juvenile Action No. J–93117, supra* [134 Ariz. 105] 654 P.2d [39] at 42 * * * *

We remand to the children's court for further specific determination in accordance with this opinion and for the adoption of a specific factual finding as to whether, under § 32–1–30, it is feasible to institute an appropriate treatment and rehabilitation program for the child which could rehabilitate him within the time period within which he would remain within the jurisdiction of the juvenile court. If the court finds (1) that the current facilities and treatment options are inadequate, considering defendant's mental condition, and his needs, and (2) that the implementation of an adequate treatment program is not feasible, within the time restraints placed upon juvenile authorities to accomplish the rehabilitation, the order of transfer is affirmed. Conversely, if the court finds that the child is both amenable to treatment and that the available facilities and programs are adequate to effect rehabilitation, or that an appropriate program can be feasibly or practicably instituted for treatment and rehabilitation of the child within the jurisdictional time restraints, the order of transfer is reversed and the cause remanded for further proceedings under the Children's Code.

IT IS SO ORDERED.

WOOD and BIVENS, JJ., concur.